In re GRAND JURY PROCEEDINGS.

**Appeal of FMC CORPORATION, Douglas E. Kliever and Cleary, Gottlieb, Steen & Hamilton.**

No. 79–1481.

United States Court of Appeals, Third Circuit.

Argued June 8, 1979.
Decided July 18, 1979.

Thomas A. Bergstrom (argued), Philadelphia, Pa., for appellant FMC Corp.

James D. Crawford (argued), Joseph A. Tate, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Douglas E. Kliever and Cleary, Gottlieb, Steen & Hamilton.

Peter F. Vaira, U. S. Atty., Walter S. Batty, Jr. (argued), Asst. U. S. Atty., Chief, Appellate Div., William B. Lytton (argued), Asst. U. S. Atty., Jane Barrett McEvoy, Paul Laskow, Sp. Asst. U. S. Attys., Philadelphia, Pa., for appellee.

Before HUNTER, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

The crime-fraud exception to the attorney-client privilege permits the disclosure of otherwise protected material. In this case, the district court applied the same rule of disclosure to documents covered by the work product privilege. Finding that the government had presented a prima facie case to support the allegation of the commission of a crime, the district court ordered counsel for the corporate client to produce the documents for a grand jury's inspection. We agree with the court's reasoning but remand for a more specific factual determination as to when the alleged crime occurred.

In 1977, a grand jury sitting in Philadelphia began an investigation into allegations that FMC Corporation had made false statements to the Environmental Protection Agency (EPA) in connection with the discharge of carbon tetrachloride into the Kanawha River in West Virginia. No indict-

ments were returned by that grand jury but a new one was convened in January, 1979. It issued subpoenas *duces tecum* and *ad testificandum* to Douglas Kliever, an attorney and partner in the firm of Cleary, Gottlieb, Steen & Hamilton, which had been retained by FMC. The firm represented FMC in its negotiations with the EPA bearing on pollution problems in the Kanawha River near South Charleston, West Virginia, the site of the corporation's carbon tetrachloride manufacturing facilities.

Kliever produced a number of the subpoenaed documents for the grand jury but asserted the attorney-client and work product privileges as to 31 of them. The government filed a motion to compel production of the withheld documents, to which FMC and Kliever responded. Although FMC did not file a formal petition, it was treated as an intervenor by the district court. The documents were submitted to the district judge for his review *in camera*, and he heard an ex parte *in camera* presentation by the government. Following these proceedings, the court directed that all of the documents be produced. In his bench opinion, the district judge assumed for purposes of his ruling that the attorney-client privilege had been properly claimed by FMC. He denied the use of the privilege, however, because the government had "presented prima facie evidence that a crime has been committed by FMC personnel."

The district judge expressed some doubts about the applicability of the work product privilege because the documents were prepared in anticipation of civil matters rather than the grand jury investigations.[1] Assuming that issue in favor of the appellants, the court nonetheless ruled that the work product privilege could not be recognized because of the crime-fraud exception, and because the government had "made a show-

ing of substantial need" for the documents. Both FMC and Kliever promptly filed appeals and petitioned this court for a stay of the order directing Kliever to testify, asserting that the attorney would not disobey the district court nor would FMC ask him to do so. We granted the stay, and consolidated this appeal with two others growing out of the same grand jury investigation.[2]

I.

◼ We turn first to the question of appealability and the standing of the parties to raise certain privileges. Mr. Kliever has not been adjudged in contempt and thus comes within the ambit of *United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), and *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). Those cases hold that unless and until a witness has been held in contempt, he has no standing to appeal from an order directing him to testify or produce documents before a grand jury. The policy, though at times a harsh one, was formulated to discourage appeals in all but the most serious cases. Indeed, in this instance the candid representation by Mr. Kliever that he would not disobey the court order is an example of the prudential considerations underlying the rule. We conclude, therefore, that we have no jurisdiction to consider the appeal on Mr. Kliever's behalf.

FMC, however, stands in a different posture because it has not been subpoenaed to produce the documents and therefore would not be held in contempt were they not produced. The company contends that it comes within the exception to the *Cobbledick* rule applicable to the owner of a privilege or property who may appeal a production order as an intervenor. As we said in *In re Grand Jury Proceedings (Cianfrani),* 563 F.2d 577, 580 (3d Cir. 1977), "[r]easoning pragmatically that a witness will not usual-

---

1. Another grand jury investigation in progress in the United States District Court for the Southern District of West Virginia also concerns FMC and the subject matter of both investigations substantially overlaps.

2. Both of those appeals involved different legal issues and are being dismissed this day because of the lack of appealable orders. *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 806 (3d Cir. 1979) (per curiam); *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 804 (3d Cir. 1979) (per curiam).

ly undergo the penalties of contempt in order to preserve someone else's privilege, the courts permit appeal by an intervenor without the necessity of a sentence for contempt." *See United States v. Nixon,* 418 U.S. 683, 691, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Perlman v. United States,* 247 U.S. 7, 15, 38 S.Ct. 417, 62 L.Ed. 950 (1918); *Velsicol Chemical Corp. v. Parsons,* 561 F.2d 671, 673–74 (7th Cir. 1977), *cert. denied,* 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978); *In re Grand Jury Empanelled January 21, 1975 (Freedman),* 541 F.2d 373, 377 (3d Cir. 1976); *United States v. Doe,* 455 F.2d 753, 756–57 (1st Cir.), *vacated and remanded sub nom., Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). *See generally National Super Spuds, Inc. v. New York Mercantile Exchange,* 591 F.2d 174, 176–81 (2d Cir. 1979).[3]

■ FMC appeals as the nonsubpoenaed holder of the attorney-client privilege and asserts a right to raise the work product privilege as well. It is clear that the attorney-client privilege is one that is owned by the client, *Garner v. Wolfinbarger,* 430 F.2d 1093, 1096 n.7 (5th Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971); *Tillotson v. Boughner,* 350 F.2d 663, 665 (7th Cir. 1965), and that he has standing to appeal an order directed to his attorney that affects the privilege. *Velsicol Chemical Corp. v. Parsons, supra* at 674. We thus conclude that the court has jurisdiction to entertain this appeal.

■ Although FMC owns the attorney-client privilege, its entitlement to the work product privilege is not as clear. We dis-

cussed the work product doctrine in *In re Grand Jury Investigation (Sun Co.),* 599 F.2d 1224 (3d Cir. 1979), noting its application in the civil field, *Hickman v. Taylor,* 329 U.S. 495, 505–14, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and its inclusion in the criminal law as well, *United States v. Nobles,* 422 U.S. 225, 236, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), including grand jury proceedings, *In re Grand Jury Proceeding (Duffy),* 473 F.2d 840, 842–43 (8th Cir. 1973). Essentially, the privilege is designed to prevent disclosure of the attorney's legal theories, research, and certain factual material gathered in preparation for proper representation of the client, *Hickman v. Taylor, supra* at 508–13, 67 S.Ct. 385.

■ The parameters of the privilege are still developing but in general the "work product" label fairly conveys the substance of the concept. It is distinct from and broader than the attorney-client privilege, which protects only communications between the attorney and his client. A lawyer may assert the work product privilege, *In re Grand Jury Proceeding (Duffy), supra;* indeed, it has been said that he alone may invoke it. *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136, 152 (D.Del. 1977). We are not inclined to accept quite that narrow an application, however. It is not realistic to hold that it is only the attorney who has an interest in his work product or that the principal purpose of the privilege— to foster and protect proper preparation of a case—is not also of deep concern to the client, the person paying for that work. To the extent a client's interest may be affected, he, too, may assert the work product privilege.[4] In *In re Grand Jury Proceeding*

---

**3.** This court's decision in *In re Grand Jury (Jaskiewicz),* 362 F.2d 942 (3d Cir. 1966) (per curiam), relied on by the government, does not control this appeal. There, as here, the appellant was a professional (in that case, an accountant) who had not been held in contempt, and, accordingly, the *Cobbledick* rule applied to prevent his appeal. Although the accountant's client did intervene at some point, the court did not discuss his status, and the opinion does not reveal whether he had participated in the district court proceedings and asserted his state statutory privilege. Thus, we do not view *Jaskiewicz* as dispositive of this appeal.

**4.** We do not intend any implication that the work product material may be divulged on the client's waiver alone. The concern of the lawyer in maintaining the confidentiality necessary to proper preparation of a case must be recognized. For example, an intrafirm memorandum commenting adversely on a client's credibility may be a crucial part of the preparatory process that, if revealed, and especially if later found to be untrue, might be destructive of the attorney-client relationship. This aspect of the privilege is a factor the trial court must consider in determining whether work product should be divulged. It is not necessary to ex-

*(Sun Co.), supra,* we considered at length a client's objections to disclosure of the attorney's work product and thus impliedly, though not expressly, found standing. Appraising realistically the interests of lawyer and client, we conclude that FMC has standing in this proceeding to assert its attorney's work product privilege.

## II.

■ We turn then to the merits. The government contends that the crime-fraud exception operates to permit disclosure of documents that FMC asserts are protected by the work product doctrine as well as those coming within the ambit of the attorney-client relationship. This rule of disclosure is ordinarily viewed as an exception to the attorney-client privilege, and there is no question as to its applicability in that context. Its rationale is straightforward. The attorney-client privilege is designed to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation. *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The ultimate aim is to promote the proper administration of justice. That end, however, would be frustrated if the client used the lawyer's services to further a continuing or future crime or tort. Thus, when the lawyer is consulted, not with respect to past wrongdoing but to future illegal activities, the privilege is no longer defensible and the crime-fraud exception comes into play. *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 77 L.Ed. 993 (1933); *In re Murphy,* 560 F.2d 326, 337 (8th Cir. 1977). *See generally* C. McCormick, Law of Evidence § 95 (2d ed. 1972); Hazard, *An Historical Perspective on the Attorney-Client Privilege,* 66 Calif.L.Rev. 1061 (1979). In determining whether the exception is appli-

cable, the client's intention controls and the privilege may be denied even if the lawyer is altogether innocent. *United States v. Calvert,* 523 F.2d 895, 909 (8th Cir. 1975).

■ In the case at bar, the district judge ruled that the crime-fraud exception applied to both the attorney-client and work product privileges. As we observed earlier, the two privileges are separate and distinct, but there is also an overlap. Information furnished by the client to the lawyer may merge into his work product; moreover, the overriding purpose of the two privileges is the same—to encourage proper functioning of the adversary system. From this viewpoint, there is no actual inconsistency in applying the crime-fraud exception to the work product as well as to the attorney-client privilege.[5] The rationale supporting the exception in both areas is virtually identical. The work product privilege is perverted if it is used to further illegal activities as is the attorney-client privilege, and there are no overpowering considerations in either situation that would justify the shielding of evidence that aids continuing or future criminal activity.

Recognizing a crime-fraud exception to the work product doctrine would be consistent with the precept reiterated by the Supreme Court that "evidentiary privileges are not favored . . . ." *Herbert v. Lando,* 441 U.S. 153, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). As we observed in the context of the attorney-client privilege in *In re Grand Jury Proceedings (Sun Co.), supra* at 1235, in language equally adaptable to the work product setting, "because the privilege obstructs the search for truth and because its benefits are, at best, 'indirect and speculative,' it must be 'strictly confined within the narrowest possible limits consistent with the logic of its princi-

---

pand upon that issue here because counsel's interests asserted in the district court are in harmony with his client's, nor do we find after an examination of the challenged documents any indication that the problem exists in this case.

5. In the present case no claim has been made that the crime-fraud exception is different for

the attorney-client than for the work product privilege. In view of our holding, however, that the lawyer, as well as the client, shares the work product privilege, there may be circumstances in which the attorney, without knowledge of his client's illegal activity, might nevertheless properly claim and prevail in asserting a work product privilege.

ple.'" As a necessary corollary, moreover, we have held that the work product privilege is a qualified one that can be overcome by a showing of good cause. *Id.* at 1231. We have no doubt that the crime-fraud exception comes within "good cause" to deny applicability of the work product doctrine. In reaching this conclusion, we find most helpful the principles followed by courts in determining whether the exception applies to defeat the attorney-client privilege. For in a case such as this, where the two privileges substantially overlap, there appear to be no compelling reasons for employing different standards.

 Nevertheless, although we agree with the district court that generally the crime-fraud exception applies to the work product as well as to the attorney-client privilege, we have some difficulty in determining whether the principle was properly invoked in this case. We appreciate the district judge's desire to be circumspect in his findings so that in the event of a contrary appellate ruling there would be no premature disclosure of privileged matter. But the district court's finding that "a crime *has* been committed by FMC" (emphasis ours) does not state whether the crime was committed before or after Mr. Kliever and his firm were retained for the work during which the documents at issue were generated. If the crime had been completed before retention of the Cleary firm, then the privilege should be in effect. If, however, the crime was a continuing one, or one that occurred after the firm was consulted, then the prima facie showing made by the government would suffice to allow inspection by the grand jury.[6]

 The district court also indicated some reservations about whether the documents were within the privilege since they had been created for use in the civil proceedings rather than specifically for the grand jury investigations. That issue was raised in *In re Grand Jury Proceedings (Sun Co.), supra,* and there we discussed the various tests that had been advanced. We found particularly attractive the one set forth in 8 C. Wright and A. Miller, Federal Practice and Procedure § 204, at 198 (1970):

> "Prudent parties anticipate litigation and begin preparation prior to the time suit is formally commenced. Thus, the test should be whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."

It appears from the record that at least after mid-1974 Cleary, Gottlieb, Steen & Hamilton, and particularly Mr. Kliever, represented FMC in connection with administrative proceedings before the EPA. These matters included problems caused by the alleged discharge of chemicals into the Kanawha River, the very matter underlying the grand jury investigations. There is thus an identity of subject matter between that pursued in the civil aspects and the grand jury investigations. During some stages, moreover, both the civil and grand jury matters were proceeding at the same time and, therefore, a temporal connection between the civil and criminal litigation was established as well. In these circumstances, we conclude that the documents subpoenaed covering the period from July, 1975 to September, 1978 qualify for consideration of the work product privilege even though they may not have been prepared specifically in connection with the grand jury investigations. We therefore need not decide whether the work product privilege applies to all litigation, related or not. *Cf. In re Murphy, supra* at 334–35.

---

6. We need not determine at this time whether the question of admissibility of the documents at trial is to be determined by a more stringent standard. The district judge stated, "I further find on the basis of the government showing and my own independent examination of the documents themselves that the documents claimed to be privileged are related to the charges under investigation. *See In Re September, 1975 Grand Jury Term,* 532 F.2d 734 (10th Cir. 1976). Therefore, I conclude that at least for purposes of the grand jury proceedings the crime fraud exception to the attorney-client privilege is established." We consider this an adequate link between the documents and the alleged crime.

Since the record does not demonstrate when it was that the alleged crime to which the district court referred may have occurred, we are unable to determine whether there was error in the court's order. We therefore will remand for a more specific finding. If the court determines that the alleged crime occurred before the Cleary firm and Mr. Kliever were consulted in connection with the carbon tetrachloride discharges, then the district court may rule that both privileges should be given effect. If, however, the court determines that the alleged crime occurred after consultation with counsel, then, consistent with this opinion, the court may find that the crime-fraud exception bars use of the privileges.

Accordingly, the matter will be remanded to the district court for further proceedings. In view of the delay already incurred in the grand jury proceedings by this appeal, the mandate shall issue forthwith. Both parties to bear their own costs.