PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2815
_____

IN RE  Application of CHEVRON CORPORATION for
an Order Pursuant to 28 U.S.C. Section 1782 to
Conduct Discovery for Use in Foreign Proceedings

Uhl, Baron, Rana & Associates, Inc;
Ecuadorian Plaintiffs,


Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 2-10-cv-02675)
Honorable Stanley R. Chesler, District Judge
_____

Argued November 17, 2010

BEFORE:  AMBRO, FISHER, and GREENBERG, <u>Circuit
Judges</u>

(Filed: February 3, 2011)

———————————

O. Andrew F. Wilson (argued)
Ilann M. Maazel
Adam R. Pulver
Emery Celli Brinckerhoff & Abady

75 Rockefeller Plaza
20th Floor
New York, New York 10019

James T. Hunt, Jr.
Slater, Tenaglia, Fritz & Hunt
2300 New Road
Northfield, New Jersey 08225

Attorneys for appellants

Randy M. Mastro (argued)
Gibson, Dunn & Crutcher
200 Park Avenue
47th Floor
New York, New York 10166-0193

Scott A. Edelman
Andrea E. Neuman
Julian W. Poon
William E. Thomson
Gibson, Dunn & Crutcher
333 South Grand Avenue
Los Angeles, California 90071-3197

Ashley E. Johnson
Gibson, Dunn & Crutcher
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201-6912

Herbert J. Stern
Stephen M. Plotnick
Justin A. Marchetta
Stern & Kilcullen, LLC
75 Livingston Avenue
Roseland, New Jersey 07068

       Attorneys for appellee

_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

## I. INTRODUCTION

This matter comes on before this Court on appeal from a District Court's order entered June 15, 2010, granting Chevron Corporation the opportunity to engage in discovery pursuant to its application under 28 U.S.C. § 1782. Section 1782(a) provides in material part that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal[.]"

3

Section 1782(a), however, includes the limitation that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." The District Court, following a hearing that consisted of arguments of counsel, found that it was appropriate for it to grant a portion of Chevron's section 1782 application. In reaching its result the Court rejected a privilege issue raised in the proceeding by appellants, the plaintiffs in an environmental damages action in Ecuador and a New Jersey environmental consulting firm, Uhl, Baron, Rana & Associates, Inc. (UBR), engaged by the plaintiffs in the Ecuadorian case as a non-testifying environmental consultant.[1] The Court in rejecting the claim of privilege held that "[t]o the extent that any privilege or immunity from disclosure would otherwise apply to some or all of the discovery sought by Chevron pursuant to its Application, any such privilege has been waived and/or does not apply pursuant to the crime-fraud exception[.]"[2] App. at 3.

We now hold that the District Court applied the appropriate standards in considering Chevron's section 1782 application and correctly determined that the provision of documents to an Ecuadorian court-appointed expert to assess

---

1 Sometimes we use the terms appellants and UBR interchangeably inasmuch as both the Ecuadorian plaintiffs and UBR are appellants and the Ecuadorian plaintiffs engaged UBR.

2 The order listed the documents, materials, information, and communications to which the crime-fraud exception had been waived or did not apply.

4

damages resulted in a waiver of any work-product protections and attorney-client privileges that might otherwise have precluded discovery of those documents. We limit our opinion, however, because we also hold that the District Court's ruling that the crime-fraud exception to the attorney-client privilege was applicable, to the extent that the privilege was not waived, was too sweeping and has the potential to pierce the attorney-client privilege for documents that were not created or used in furtherance of the alleged fraud and thus are not subject to disclosure through the application of the exception. We therefore will vacate the District Court's determination with respect to the crime-fraud exception to the attorney-client privilege and will remand the case to the District Court so that it can conduct an in camera review of the relevant documents and determine whether the crime-fraud exception to the attorney-client privilege is applicable to any of the documents and, if so, which ones.

## II. HISTORY

It is helpful in this case, arising out of 17 years of still ongoing litigation spanning across two continents, to provide background information to place this case in its proper perspective. In 1993, certain communities in the Amazon River area of Ecuador[3] (the Ecuadorian plaintiffs) filed a class action in the United States District Court for the Southern District of

---

3 Some of the plaintiffs were Peruvian but we do not further discuss their position in the case as the parties do not focus on them on this appeal.

New York against Texaco, Inc. (Texaco), claiming that its subsidiary, Texaco Petroleum Company (TexPet), had caused massive environmental contamination and degradation in Ecuador that sickened and killed numerous persons in the Amazon River area. See generally Aguinda v. Texaco, Inc., 303 F.3d 470 (2d Cir. 2002). Texaco, and later Chevron after Texaco and Chevron partially merged in 2001, sought a dismissal of the suit on the basis of their claim of forum non conveniens and principles of international comity, contending that the Ecuadorian courts provided a more appropriate forum for the litigation. In advancing their forum non conveniens argument, Texaco, and then Chevron, contended that the Ecuadorian courts offered a fair and adequate forum for the litigation and the Ecuadorian judiciary was impartial and free from corruption. Id. at 474-80. After protracted litigation which resulted in the rendering of several opinions by the United States District Court for the Southern District of New York and the United States Court of Appeals for the Second Circuit, the District Court dismissed the action on the grounds of forum non conveniens and the Court of Appeals affirmed the District Court's dismissal of the case. The Courts conditioned the dismissal, however, on Chevron's agreement to consent to the jurisdiction of the Ecuadorian courts and to waive any statute of limitations defenses that it might have if the Ecuadorian plaintiffs refiled the case in Ecuador.

Promptly after the dismissal, the Ecuadorian plaintiffs refiled the case in a court in Lago Agrio, Ecuador, against Chevron (the Lago Agrio litigation).[4] Though a trial began that

4 Chevron asserts that when the Ecuadorian plaintiffs filed the

6

year in the Lago Agrio litigation, the case still is pending in the Lago Agrio Court.[5] It is an understatement to characterize the Lago Agrio litigation as contentious, as both sides of the litigation vigorously have opposed nearly every move by the other, and have accused the other side of criminal or fraudulent conduct in the course of the litigation.[6]   Appellants represent

---

Lago Agrio litigation they did not simply refile the earlier action from the Southern District of New York, apparently because the parties in the two cases are not identical.  We have no need to discuss that point further.

5 It is our understanding that the Ecuadorian courts conduct trials, or at least have conducted the trial in this case, by the examination of written submissions.

6 Indeed, two of Chevron's attorneys face criminal prosecution in Ecuador arising out of the Lago Agrio litigation.  Chevron believes that the Ecuadorian plaintiffs or their attorneys were responsible for those prosecutions.  Moreover, appellants note that a court-appointed global damages expert filed an official complaint with the Lago Agrio Court asserting that individuals associated with Chevron were interfering with his work and threatening him and his team, and that the court responded to this complaint by providing the expert with law enforcement protection when he was conducting field work.  For its part, Chevron claims that the Ecuadorian plaintiffs perpetrated a fraud on the Lago Agrio Court by illegally and surreptitiously colluding with the supposedly independent global damages expert that the Lago Agrio Court appointed and by essentially ghost-writing his report for him.

that the Lago Agrio litigation has generated a massive record containing "more than 200,000 pages of evidence, roughly 63,000 chemical sampling results produced by laboratories contracted by both parties and the court experts, testimony from dozens of witnesses, and dozens of judicial field inspections of former Chevron wells and production sites conducted over a five-year period under the oversight of the Lago Agrio court." Appellants' br. at 9.

Early in the Lago Agrio litigation, both sides employed experts who submitted reports concerning the contamination at former TexPet well sites. In October 2003, the Ecuadorian plaintiffs petitioned the Lago Agrio Court to appoint an expert to conduct a global damages assessment of the contamination that TexPet allegedly caused. At that time Chevron did not file a similar petition, but in 2007 it petitioned for appointment of a global damages assessment expert, a request that the court denied as untimely. Consequently, the Lago Agrio Court determined that it would appoint a single global damages expert, with the Ecuadorian plaintiffs and Chevron each nominating a candidate for the position. Ultimately, however, the Lago Agrio Court did not appoint either candidate and instead appointed Richard Stalin Cabrera Vega (Cabrera), an Ecuadorian environmental engineer and geologist who had served as a court-appointed expert earlier in the case, as the global damages expert. Although the Lago Agrio Court appointed Cabrera, it ordered the Ecuadorian plaintiffs to pay his fees because they had requested the appointment of such an expert.

Cabrera accepted the appointment, and he and his team conducted numerous field inspections of the contamination sites,

8

with the parties being given notice of the date and location of those inspections and being allowed to participate in the inspection process. Moreover, Cabrera, from time to time, requested that the parties submit materials to him. In response to Cabrera's requests, the Ecuadorian plaintiffs submitted documents to him in support of their claims, but Chevron did not submit any documentation in support of its position to him. The process of this document submission has given rise to one of the primary issues in dispute between the parties because they are at odds on the question of whether they were permitted to submit documents on an ex parte basis to Cabrera for his consideration in drafting his report. Indeed, Chevron regards the suggestion that the Lago Agrio Court permitted the submission of documents on an ex parte basis as "absurd." Appellee's br. at 17. On the other hand, the Ecuadorian plaintiffs contend that the submissions were authorized and that the Lago Agrio Court actually "encouraged" the parties to provide documents in support of their positions to Cabrera. Appellants' br. at 44.

Cabrera's final assessment calculated the global damages at $27.3 billion. Chevron reacted to that assessment by filing a motion with the Lago Agrio Court seeking to have it strike the global damages assessment from evidence and declare that Cabrera's appointment as global damages assessment expert was null and void. Though the Lago Agrio Court did not give Chevron the relief it sought when it filed its motion, the court indicated that it understood that Chevron was dissatisfied with Cabrera and his final report, and reiterated that "the court is not

9

required to abide by the opinion of the experts."[7]  Appellee's Request for Judicial Notice at ex. 7.[8]  The court then, in what it explained was an effort to "receive further enlightenment and illustration and additional elements for judgment," provided the parties with an additional 45 days to make new damages submissions for it to consider in reaching its judgment.  Id.

Chevron's responses to what it plainly regarded as unpalatable proceedings in Ecuador did not stop with it taking steps in that country, as it obviously, and ironically in view of its contentions on its forum non conveniens application that resulted in the dismissal of the Southern District of New York litigation, had lost faith in the Ecuadorian courts.  Thus, in an out-of-Ecuador response, Chevron filed a notice of arbitration under the United Nations Commission on International Trade Law (UNCITRAL) pursuant to the United States-Ecuador Bilateral Investment Treaty (BIT) on November 23, 2009,

7 Apparently, under Ecuadorian law, the presiding judge will not be permitted to rule on the objections to the global damages assessment report Cabrera prepared until the judge issues the final judgment in the case.

8 Even though, as we explain below, we deny the parties' motions to supplement the record on appeal, we are considering the Lago Agrio Court's response to Chevron's motion because of the significance of the response in the context of this section 1782 application and because the court filed the response on August 2, 2010, a date after the District Court rendered its ruling on June 15, 2010.

challenging the Ecuadorian proceedings in an attempt to obtain an award that would preclude international recognition of the judgment that the Lago Agrio Court will enter in the Lago Agrio litigation.[9] The parties to the arbitration proceeding are Chevron and the Republic of Ecuador, but not the Ecuadorian plaintiffs even though they have an interest in the outcome of the arbitration. Chevron asserts that it is entitled to the relief it seeks because it believes that the Ecuadorian government has conspired with the Ecuadorian plaintiffs to influence the outcome of the Lago Agrio litigation.[10]

9 According to appellants, Chevron has asked the BIT arbitration panel to tell the Ecuadorian government to direct the judge in the Lago Agrio litigation to dismiss the case but Chevron denies that it has asked for such relief and asserts, as we have pointed out, that it seeks an outcome precluding enforcement of a judgment entered in the Lago Agrio Court outside of Ecuador.

10 Both the Ecuadorian plaintiffs and the Republic of Ecuador filed suits in the United States District Court for the Southern District of New York seeking to obtain an order staying the BIT arbitration. In those actions the plaintiffs contended that Chevron should be precluded from challenging the fairness of the Ecuadorian court system inasmuch as Texaco argued so vehemently when pressing its forum non conveniens motion that the case should be venued in Ecuador in part because the courts in that country were fair and impartial. The District Court in the Southern District of New York has declined to stay the BIT arbitration, but the parties seeking that relief have appealed to the United States Court of Appeals for the Second Circuit and

11

In addition to having instituted the BIT arbitration in reaction to the Ecuadorian proceedings, Chevron has brought an extraordinary series of at least 25 requests to obtain discovery from at least 30 different parties pursuant to section 1782 in United States District Courts throughout the United States. These requests, which include the proceedings before us now, seek evidence to support Chevron's claim that the Ecuadorian plaintiffs committed fraud in the prosecution of the Lago Agrio litigation. Chevron's overarching contention in seeking the section 1782 discovery is that the judicial process in Ecuador is corrupt and that the Ecuadorian plaintiffs and their associates have fraudulently conspired with Cabrera to produce a skewed damages report that the Ecuadorian plaintiffs ghost-wrote. Chevron seeks to use the discovery it obtains pursuant to its section 1782 requests in the Lago Agrio litigation and the BIT arbitration to support this contention.

In the section 1782 case now before us, Chevron filed its suit in the District of New Jersey, contending that UBR, the New Jersey-based environmental consulting firm that the Ecuadorian plaintiffs engaged, employed Juan Cristóbal Villao Yepez (Villao), one of the 14 technical experts participating in the preparation of Cabrera's global damages report. Chevron contends that the appearance of materials in Cabrera's final global damages assessment report with UBR's logo demonstrates that Cabrera's report was not impartial and that Cabrera improperly conspired with the Ecuadorian plaintiffs and

that appeal currently is pending. Apparently the BIT arbitration panel has not yet decided whether it has jurisdiction to entertain the arbitration proceeding.

12

UBR in drafting his report.

Appellants, on the other hand, express no surprise that Cabrera's report incorporates documents that they provided to him, including documents that UBR prepared, for they maintain that, as we pointed out above, the Lago Agrio Court sanctioned their providing Cabrera with the documents. Appellants further contend that Cabrera was free to accept or reject the Ecuadorian plaintiffs' submissions and consequently was free to incorporate the submissions into his report so long as he found them to be credible. Nevertheless, in light of Villao's dual employment and the presence of materials from UBR in Cabrera's report, Chevron urges that it is entitled to an order under section 1782 compelling UBR and Villao to turn over any documents transmitted between UBR and Cabrera, between Villao and Cabrera, and between counsel for the Ecuadorian plaintiffs and Villao. Chevron's application led to the proceedings in the District Court and thus has led to this appeal.

The District Court heard oral argument on Chevron's application on June 11, 2010, and issued a decision from the bench on that day granting Chevron's section 1782 discovery request as to UBR.[11] The Court then entered an order on June 15, 2010, requiring UBR to produce documents transmitted

11 Because section 1782 only applies to a person who "resides" in the district of the District Court and Villao lives in Ecuador, the District Court dismissed Chevron's request to the extent that it related to Villao but did so "without prejudice to Chevron's right to later establish that he is found in the district." App. at 2.

between UBR and Cabrera, and, so far as UBR possessed them, any documents transmitted between Villao and Cabrera or Villao and the attorneys for the Ecuadorian plaintiffs or their representatives. The order also permitted Chevron to cause a subpoena to be served in furtherance of the discovery. We reiterate that the District Court rejected appellants' claims that the documents that Chevron requested were privileged by reasoning that "[t]o the extent that any privilege or immunity from disclosure would otherwise apply to some or all of the discovery sought by Chevron pursuant to its Application, any such privilege has been waived and/or does not apply pursuant to the crime-fraud exception[.]" App. at 3. The Court directed UBR to produce a list of all of the documents that appellants believed were privileged and thus were not subject to disclosure, so that the Court could review the list and reach its own conclusion as to whether any of the documents remained privileged.[12]

Following the District Court's issuance of its order on June 15, 2010, appellants appealed to this Court and simultaneously filed a motion for a stay pending appeal. The District Court denied appellants' application for a stay pending appeal, but issued a temporary stay pending appellants'

---

12 It would seem to have been inconsistent for the District Court both to rule that the attorney-client privilege had been waived or did not apply because of the crime-fraud exception and yet to direct UBR to produce a list of communications that appellants believed were privileged for the Court's review. Nevertheless, in view of our outcome we need not address this point further.

application for a stay to this Court. We subsequently granted appellants a stay pending appeal on July 6, 2010, and also ordered that the appeal be expedited.[13]

III. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1782 and we have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's decision on the section 1782 discovery request for an abuse of discretion. See In re Bayer AG, 146 F.3d 188, 191 (3d Cir. 1998). However, if "the district court misinterpreted or misapplied the law," or if "the court relied on inappropriate factors in the exercise of its discretion, our review is plenary." Id. We review the District Court's ruling regarding waiver of the work product privilege for an abuse of discretion. In re Grand Jury (Impounded), 138 F.3d 978, 980-81 (3d Cir. 1998). Finally, we review the legal issues underlying the District Court's application of the crime-

---

13 The parties have moved on several occasions to supplement the record on appeal and we now deny those motions except that we have taken judicial notice of one proceeding in the Lago Agrio Court that was not in the original record in the District Court as it took place after the District Court decided this case and the proceeding is quite significant. Our denial of the motions to supplement the record has not affected the outcome of this appeal as most of the evidence with which the parties seek to supplement the record is related only tangentially to the issues on this appeal.

fraud exception to the attorney-client privilege de novo, and its factual determinations for clear error. In re Impounded, 241 F.3d 308, 312 (3d Cir. 2001).

## IV. DISCUSSION

Appellants first claim that Chevron's discovery request was not proper under section 1782 because Chevron sought discovery not intended "for use in a proceeding in a foreign or international tribunal." See 28 U.S.C. § 1782(a). Appellants argue that as a matter of statutory interpretation "[d]iscovery is not 'for use in a proceeding before a foreign tribunal' where its purpose is to attack the tribunal itself." Appellants' br. at 22 (emphasis in original). The initial problem with appellants' contention is that Chevron intends to use the evidence that it uncovers in an attempt to show the Lago Agrio Court that the Ecuadorian plaintiffs have engaged in fraud in the proceedings before that court. Furthermore, use of the evidence uncovered in a section 1782 application in the BIT arbitration to "attack" the Lago Agrio Court unquestionably would be "for a use in a proceeding in a foreign or international tribunal." The possibility that the evidence may be utilized to cast doubts on the impartiality of the Lago Agrio Court does not mean that Chevron's request for the evidence runs afoul of section 1782 and that Chevron therefore may not obtain the evidence.

Appellants next contend that the District Court abused its discretion when it granted Chevron's section 1782 discovery request. The seminal case exploring the parameters of section 1782 is Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S.

16

241, 124 S.Ct. 2466 (2004), in which the Supreme Court explained that section 1782 "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." Id. at 247, 124 S.Ct. at 2473. In Intel, the Court rejected the "suggestion that a § 1782(a) applicant must show that United States law would allow discovery in domestic litigation analogous to the foreign proceeding." Id. at 263, 124 S.Ct. at 2482. The Court also held that section 1782 does not contain a "threshold requirement that evidence sought from a federal district court would be discoverable under the law governing the foreign proceeding." Id. at 247, 124 S.Ct. at 2473. The Court reasoned that "[b]eyond shielding material safeguarded by an applicable privilege . . . nothing in the text of § 1782 limits a district court's production-order authority . . . ." Id. at 260, 124 S.Ct. at 2480.

The Supreme Court cautioned, however, that "comity and parity concerns may be important as touchstones for a district court's exercise of discretion in particular cases[.]" Id. at 261, 124 S.Ct. at 2481. To that end, the Court discussed factors that a district court should consider when ruling on a section 1782(a) request:

> First, when a person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order

17

them to produce the evidence. . . .

. . .

> Second, as the 1964 Senate Report suggests, a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance. . . . Specifically, a district court could consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States. . . . Also, unduly intrusive or burdensome requests may be rejected or trimmed.

Id. at 264-65, 124 S.Ct. at 2483 (citations omitted). Inasmuch as relevant evidence is presumptively discoverable, "[t]he party opposing discovery [under section 1782(a)] has the 'burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application.'" Bayer AG v. Betachem, Inc., 173 F.3d 188, 190 (3d Cir. 1999) (quoting In re Bayer AG, 146 F.3d at 196).

The first Intel factor favors allowing Chevron to obtain the discovery it seeks because UBR is not a participant in the Lago Agrio litigation and, so far as we can determine from the record before us, is not subject to the jurisdiction of the Lago

18

Agrio Court.[14]  Moreover, though we are aware that appellants argue that the documents transmitted to Cabrera are within the jurisdictional reach of the Lago Agrio Court, we have no basis to question the District Court's observation or its conclusion that followed at the hearing on Chevron's application that "Cabrera has apparently indicated that he has not been in receipt of any documents from UBR," and for that reason "directing Mr. Cabrera to produce documents which he says he did not have would be pointless and fruitless as an exercise by the Ecuadorian court." App. at 50.  Additionally, though we cannot come to a conclusive determination on the issue, it is questionable whether the jurisdictional reach of the BIT arbitral panel embraces either UBR or Cabrera, which, after all, are not parties to the arbitration proceeding, so that the panel may compel them to produce documents.  In this regard, we note that, according to the District Court, the arbitration panel "does not have the authority to order such a production," and so those documents "would not be obtainable for use in the [BIT] arbitration absent discovery under Section 1782(a)." Id. at 50-51.

Appellants claim, with respect to the second Intel factor, that the Lago Agrio Court is not receptive to the documents Chevron is seeking in its section 1782 request.  We regard this

14 We see nothing in the briefs advancing arguments similar to the contention advanced in countless cases in courts in the United States, that an entity foreign to the forum, by its conduct that had consequences within the governmental jurisdiction of the forum court, became subject to the jurisdiction of that government's courts.

claim as naked because appellants do not present adequate evidence to support this contention and, as they are the parties opposing discovery under section 1782, they bear the "burden of demonstrating offense to the foreign jurisdiction." Bayer AG, 173 F.3d at 190 (internal quotation marks and citation omitted). We recognize that, according to appellants, the Lago Agrio Court has denied Chevron's requests for many of these same documents, and we are aware of their argument that the denial indicates that the Lago Agrio Court would not be receptive to Chevron obtaining the documents in the Lago Agrio litigation. But in our consideration of appellants' argument regarding the Lago Agrio Court's position with respect to the receipt of the documents, we also take into account Chevron's contention that the Lago Agrio Court has not denied Chevron's requests for the documents. Overall, the status of Chevron's requests is not clear from the record.

In any event, regardless of the Lago Agrio Court's disposition of Chevron's request for the documents, it is plain that appellants' argument conflates the question of whether a foreign court would allow analogous discovery leading to the production of documents with the question of whether that court would consider evidence revealed in a section 1782 proceeding. We have no reason to believe that the answers to those two questions necessarily are in harmony inasmuch as a court might offer limited discovery opportunities yet accept relevant evidence tendered to it if procured without its assistance. Furthermore, appellants' argument overlooks the circumstance that Chevron seeks the section 1782 discovery for use in both the Lago Agrio litigation and the BIT arbitration. In this regard, we point out that while appellants suggest that the BIT arbitral

panel would not be receptive to the evidence, so far as we can ascertain they base this suggestion on pure speculation. In these circumstances, appellants' argument is insufficient given that they bear the burden of proof on the receptiveness issue as they are the parties opposing discovery under section 1782.

Appellants also contend that, under the third Intel factor, Chevron's section 1782 discovery request is nothing more than a concealed attempt to circumvent Ecuadorian proof-gathering restrictions or other Ecuadorian policies. Again, appellants base their argument on the proposition that the Lago Agrio Court has denied Chevron's requests for these same documents, but, as we have discussed already, the parties disagree about the status of Chevron's requests to the Lago Agrio Court and we are uncertain as to that status. Without a definitive determination that the Lago Agrio Court has denied Chevron access to the same documents that Chevron seeks in its section 1782 discovery application, an issue on which appellants bear the burden of proof as the parties opposing discovery, it cannot be said that Chevron's section 1782 application is "an attempt to circumvent foreign proof-gathering restrictions." Intel, 542 U.S. at 265, 124 S.Ct. at 2483. Moreover, as we indicated above, the Lago Agrio Court might be receptive to section 1782 evidence and, if so, regardless of that court's rulings on Chevron's request for documents, it would be a stretch to conclude that the section 1782 proceeding was an attempt to circumvent Ecuadorian restrictions that somehow was offensive to the Lago Agrio Court.

We also point out that, as the Court made clear in Intel, there is no requirement that the material be discoverable in the

21

foreign country for it to be discoverable pursuant to a section 1782 request in the United States. See id. at 247, 124 S.Ct. at 2473. Moreover, appellants' argument once again minimizes the fact that Chevron's section 1782 discovery request seeks the documents for use in the BIT arbitration. Furthermore, we have no basis on which we could hold that the section 1782 request is an attempt to circumvent proof-gathering restrictions or other policies of the BIT arbitral panel. Overall, we are satisfied that none of the first three Intel factors caution against discovery.

Finally, in our consideration of Intel, we find no evidence that Chevron's section 1782 discovery request is "unduly intrusive or burdensome." See id. at 265, 124 S.Ct. at 2483. We therefore conclude that the District Court did not abuse its discretion in applying the Intel factors in considering Chevron's request in this case.

In addition to the factors that the Supreme Court elucidated in Intel to establish when, as a positive matter, a court could grant a section 1782 application, section 1782 provides that "[a] person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."[15] Appellants maintain that the District Court erred in its rulings relating to various evidentiary

---

15 It should be noted that section 1782(a), when providing for protection of documents shielded by "any legally applicable privilege," does not limit the protected documents to those of which the respondent in the section 1782 proceedings is the holder of the privilege.

privileges.[16] To start with, appellants assert that both the work-product doctrine and the attorney-client privilege shield the documents from discovery. They then contend that the District Court improperly concluded that the disclosure of the documents to a third-party waived that shield. Appellants also contend that the Court improperly concluded that, to the extent that the attorney-client privilege was not waived, application of the crime-fraud exception to the attorney-client privilege trumps the protection of the privilege.[17] Of course, if a privilege applied, then the Court should not have ordered UBR to produce the documents even though they were otherwise within the scope of disclosure that the Court could order when considering Chevron's section 1782 application.[18]

---

16 Appellants advance the contention that the District Court erred in failing to apply Ecuadorian privilege law. We, however, need not address that contention because even if we assume that privileges under Ecuadorian law should be considered in adjudicating Chevron's section 1782 application, appellants have not presented any reliable or credible evidence that there is a privilege under Ecuadorian law that would preclude the discovery sought here.

17 We agree with the District Court that the non-testifying expert privilege, see Fed. R. Civ. P. 26(b)(4), is not applicable here because, "[b]y providing consulting expert reports to a testifying expert, the privilege is lost." App. at 47.

18 The order may include documents as to which appellants do not claim a privilege.

23

Though they both operate to protect information from discovery, the work-product doctrine and the attorney-client privilege serve different purposes. The purpose behind the attorney-client privilege is "'to encourage clients to make full disclosure of facts to counsel so that he may properly, competently, and ethically carry out his representation. The ultimate aim is to promote the proper administration of justice.'" In re Impounded, 241 F.3d at 316 (quoting In re Grand Jury Proceedings, 604 F.2d 798, 802 (3d Cir. 1979)). The work-product doctrine, by contrast, "promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." Westinghouse Elec. Corp. v. Republic of the Phil., 951 F.2d 1414, 1428 (3d Cir. 1991) (citations omitted).

Though evidentiary privileges have important purposes, their recognition may result in the withholding of relevant information and so may obstruct the search for truth. Indeed, the protections are effective only if they shield evidence and thus they necessarily obstruct the search for the truth at a trial at which they are recognized either implicitly or explicitly. Consequently, privileges should be recognized only when necessary to achieve their respective purposes. See Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577 (1976). The courts, in recognition of the purposes of the work-product doctrine and the attorney-client privilege, hold that purposeful disclosure of the purportedly privileged material to a third-party, if that disclosure undermines the purpose behind each privilege,

24

may waive both protections. Thus, the courts recognize that because the attorney-client privilege serves to protect the confidentiality of communications between clients and their attorneys, "disclosure to a third party waives the attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance." Westinghouse Elec. Corp., 951 F.2d at 1428.

On the other hand, the work-product doctrine protects an attorney's work from falling into the hands of an adversary, and so "disclosure to a third party does not necessarily waive the protection of the work-product doctrine." Id. Rather, the purpose behind the work-product doctrine "requires [a court] to distinguish between disclosures to adversaries and disclosures to non-adversaries[,]" id., and it is only in cases in which the material is disclosed in a manner inconsistent with keeping it from an adversary that the work-product doctrine is waived. See id.

Appellants argue that work-product and attorney-client protections should apply in this case and UBR's submission of documents to Cabrera did not waive the protections. In furtherance of this argument, appellants contend that the submission of documents to Cabrera was not inconsistent with the holders of the privileges having the intention of keeping the materials from Chevron. Appellants predicate this argument on their contention that the parties to the Lago Agrio litigation could submit documents to Cabrera on an ex parte basis, with the understanding that the documents would remain confidential. We find that argument to be at odds with the record inasmuch as the lead attorney for the Ecuadorian

25

plaintiffs acknowledged in an affidavit that "to the extent that Mr. Cabrera put into his report any of the information that I supplied to him, it would be viewable by Chevron or any other member of the public that viewed Mr. Cabrera's report." App. at 1453.

In fact, even if we disregarded the attorney's affidavit, something we will not do, we can discern no reason for appellants' submission of the documents to Cabrera other than for him to consider those documents to advance appellants' hope that Cabrera's final global damages assessment report would reflect the materials and conclusions in the documents. Indeed, it is quite clear that appellants intended that by submitting the documents to Cabrera they would place him in a position to serve as a conduit to transmit the documents to Chevron because they hoped that Cabrera would agree with the documents' assessment of damages and thus would incorporate the documents, or at least the conclusions in them, into his report. Consequently, we are satisfied that the documents were submitted to Cabrera in a manner inconsistent with keeping them from Chevron, and therefore the work-product doctrine and the attorney-client privilege were waived as to the documents submitted to Cabrera. We therefore will affirm the District Court's order that all materials transmitted from UBR to Cabrera are subject to discovery notwithstanding any claim of work-product or attorney-client privilege protections.

The District Court also ruled that the crime-fraud exception operated to pierce the attorney-client privilege for all communications between Villao and Cabrera and between Villao and anyone affiliated with counsel for the Ecuadorian

26

plaintiffs.  As we have discussed, the attorney-client privilege promotes the attorney-client relationship and, in turn, furthers the administration of justice by protecting communications between attorneys and their clients.  See In re Impounded, 241 F.3d at 316.  That purpose "would be frustrated if the client used the lawyer's services to further a continuing or future crime or tort."  Id. (quoting In re Grand Jury Proceedings, 604 F.2d at 802) (internal quotation marks omitted).  Therefore, in situations where the client consults the attorney for the purpose of committing a future crime or fraud, the crime-fraud exception to the attorney-client privilege applies and communications made in furtherance of the anticipated crime or fraud are not protected from disclosure as recognition of  "the privilege is no longer defensible."  Id. at 317 (quoting In re Grand Jury Proceedings, 604 F.2d at 802) (internal quotation marks omitted); see also United States v. Zolin, 491 U.S. 554, 563, 109 S.Ct. 2619, 2626 (1989) ("It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." (Internal quotation marks and citations omitted)).

A party seeking to invoke the crime-fraud exception to the attorney-client privilege bears the burden of demonstrating that the exception is applicable.  In re: Grand Jury Investigation, 445 F.3d 266, 274 (3d Cir. 2006).  Specifically, before the crime-fraud exception can be invoked successfully, the party contending that it applies

must make a prima facie showing that (1) the

27

client was committing or intending to commit a fraud or crime, and (2) the attorney-client communications were in furtherance of that alleged crime or fraud. A prima facie showing requires presentation of evidence which, if believed by the fact-finder, would be sufficient to support a finding that the elements of the crime-fraud exception were met.

Id. (quoting In re Grand Jury Subpoena, 223 F.3d 213, 217 (3d Cir. 2000) (internal quotation marks omitted)).

Appellants admit that UBR employed Villao when he was also an expert on Cabrera's staff. Though we recognize that the Lago Agrio Court may view what seems to us to be a conflict of interest differently than we do, we believe that this showing of Villao's dual employment is sufficient to make a prima facie showing of a fraud that satisfies the first element of the showing necessary to apply the crime-fraud exception to the attorney-client privilege. Thus, we agree with the District Court's conclusion that the first element of the crime-fraud exception to the attorney-client privilege applied on the basis of the alleged fraud predicated on the presence of the conflict of interest attributable to Villao's dual and, at least to us, inconsistent employment.

Yet evidence of a crime or fraud, no matter how compelling, does not by itself satisfy both elements of the crime-fraud exception to the attorney-client privilege because to establish the second element of the exception the party seeking to circumvent the privilege by invoking the exception bears the

28

burden of making a prima facie showing that there were communications between the client and attorney in furtherance of that fraud. We believe that the evidence in the record is simply too sparse for us to conclude that Chevron has met that burden and thus, to date, Chevron has not made a sufficient prima facie showing that the second element of the showing that must be made to justify the application of the crime-fraud exception to the attorney-client privilege is present here.

However, even if the party seeking to invoke the crime-fraud exception to the attorney-client privilege cannot make out a prima facie case sufficient to overcome the privilege, it still may be entitled to have a court make an in camera review of the documents in issue to determine if those documents and the evidence placing the documents in context establish the applicability of the crime-fraud exception to the privilege. See generally Zolin, 491 U.S. at 570-72, 109 S.Ct. at 2630-31 (holding that in camera review of privileged documents to determine if those documents establish that crime-fraud exception applies is proper as long as party seeking to invoke crime-fraud exception makes threshold showing). Because "in camera inspection . . . is a smaller intrusion upon the confidentiality of the attorney-client relationship than is public disclosure[,]" it follows "that a lesser evidentiary showing is needed to trigger in camera review than is required ultimately to overcome the privilege." Id. at 572, 109 S.Ct. at 2630-31 (quotation marks and citations omitted). Thus, "[b]efore engaging in [an] in camera review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that in camera review of the materials

29

may reveal evidence to establish the claim that the crime-fraud exception applies."  Id. at 572, 109 S.Ct. at 2631 (internal citation and quotation marks omitted).

We are satisfied that Chevron has made "a showing of a factual basis adequate to support a good faith belief by a reasonable person . . . that in camera review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies."  See id.  Thus, although we will vacate the District Court's ruling to the extent that it determined that the crime-fraud exception to the attorney-client privilege is applicable, our ruling is by no means the last word with respect to the applicability of the exception.  Quite to the contrary, we will remand the case to the District Court to conduct an in camera review of the documents in issue to determine whether they were created or used in furtherance of a fraud and thus whether the crime-fraud exception to the attorney-client privilege is applicable to some or all of the documents the Court reviews.[19]

_____

19 It is significant that appellants in their brief, though referring to the application of Ecuadorian privilege law (which we have found they have not sufficiently documented to demonstrate its applicability), have suggested the use of the same process that we find is applicable in an analysis of the crime-fraud exception as they write that "[a]ny such waiver must also be understood in light of a document by document analysis."  Appellants' br. at 19.

We do not suggest that in camera review is necessary in every case in which the crime-fraud exception is invoked, as a

Finally we point out that, as we mentioned previously, the District Court dismissed Villao from this case because he is not within the District of New Jersey. Thus, because we lack jurisdiction over Villao, any order relating to documents in his possession that requires that <u>he</u> produce them will be unenforceable; we only have jurisdiction over UBR and in these proceedings we can order only UBR to produce documents. As the District Court recognized, an order requiring disclosure of documents transmitted between Villao and Cabrera or Villao and any attorneys associated with the Ecuadorian plaintiffs is valid only as to UBR and thus includes only those documents in UBR's possession.

## V. CONCLUSION

To summarize, we will affirm the District Court's order of June 15, 2010, requiring UBR to turn over to Chevron documents that it submitted to Cabrera because the transmission of those documents to Cabrera waived any work-product protection and the attorney-client privilege with respect to those

---

party may be able to satisfy both elements of the crime-fraud exception without resort to the privileged documents themselves. We simply hold that in this case, based on the evidence before the District Court, Chevron has not met its burden regarding the second element of the crime-fraud exception, but has made the requisite showing necessary for the District Court to conduct an in camera review of the documents in issue in order to determine if the second element of the crime-fraud exception is satisfied here.

documents. UBR should begin producing those documents immediately in accordance with the District Court's order and to the extent that our stay permitted UBR to delay producing those documents, we vacate it.

We also will vacate the District Court's ruling that the crime-fraud exception operates to pierce the attorney-client privilege for all communications between Villao and Cabrera and between Villao and anyone affiliated with counsel for the Ecuadorian plaintiffs, and will remand the case to the District Court so that it may conduct an in camera review of the documents in issue. Predicated on that review and on what other evidence is developed on the remand, the District Court should determine whether any of the documents and, if so, which ones, were created or used in furtherance of a fraud, as it is only as to documents created or used in furtherance of a fraud that the crime-fraud exception to the attorney-client privilege is applicable. Finally, we express the hope that even though our remand requires the District Court to examine individual documents, a task that we recognize likely will be formidable, the parties will cooperate in applying the directions in this opinion to the documents to be examined so that the burden on the District Court to resolve disputes is lessened. The parties will bear their own costs on this appeal.