**UNITED STATES of America**

v.

**Melvin SANTIAGO, Defendant.**

**Criminal Action No. 12–cr–00566–01.**

United States District Court,
E.D. Pennsylvania.

Jan. 3, 2013.

Sherri A. Stephan, Assistant United States Attorney, for the Government.

Jonathan W. Crisp, Esquire, for Defendant.

## OPINION

JAMES KNOLL GARDNER, District Judge.

This matter is before the court on the Government's Motion to Disqualify Attor-

ney Jonathan Crisp Based Upon an Unwaivable Conflict of Interest ("Motion to Disqualify").

## INTRODUCTION

As the United States Court of Appeals for the Second Circuit has stated, a motion to disqualify counsel presents the court with "an unenviable choice . . . a daunting dilemma" in which the court must weigh the grounds asserted in support of disqualification together with the defendant's Sixth Amendment right to counsel and the court's obligation to ensure and maintain the integrity of the judicial process. *United States v. Jones*, 381 F.3d 114, 120 (2d Cir.2004). Such is the dilemma presented by the Motion to Disqualify in which the government seeks to disqualify defendant Melvin Santiago's privately retained counsel, Jonathan W. Crisp, Esquire.

For the reasons expressed in this Opinion, I grant the Motion to Disqualify and withdraw Attorney Crisp's appearance on behalf of defendant Melvin Santiago in this matter. Specifically, I grant the government's motion and disqualify Attorney Crisp because Attorney Crisp would likely become an unsworn witness at trial by making argument to the jury concerning the importance, or lack thereof, of events (in particular, phone calls) about which he has personal knowledge and in which he was involved. I also grant the government's motion and disqualify Attorney Crisp because Attorney Crisp may be called by the government to give testimony at trial in this case.

## PROCEDURAL HISTORY

On August 8, 2012 a Criminal Complaint was filed against, and arrest warrants were issued for, defendant Melvin Santiago and five co-defendants, Ramon Reyes, Miguel Angel Soto–Perez, Oswaldo Gonzalez, Luis Monroig–Gonzalez, and Louis Anthony Mendoza.[1] Defendant Santiago was arrested in Puerto Rico that same day.

On September 11, 2012 defendant had his initial appearance before United States Magistrate Judge Elizabeth T. Hey. Defendant Santiago represented to Magistrate Judge Hey that he had retained Attorney Crisp but that he was unable to reach Attorney Crisp concerning his initial appearance. Magistrate Judge Hey granted the government's motion for temporary detention and scheduled a detention hearing for September 14, 2012.[2]

Prior to defendant's September 14, 2012 detention hearing, Assistant United States Attorney Sherri A. Stephan contacted Attorney Crisp to inquire whether Attorney Crisp intended to enter an appearance on behalf of Melvin Santiago. Government counsel communicated to Attorney Crisp her position that he had an actual, unwaivable conflict of interest which precluded him from representing Melvin Santiago in this case. Attorney Crisp sent an e-mail to AUSA Stephan in response and acknowledged the existence of a conflict based upon Attorney Crisp's representation of Turiano Roman.[3]

1. Criminal Complaint filed August 8, 2012 (Document 1).

2. *See* Bail Status and Order dated September 11, 2012 (Document 26).

3. *See* Motion to Disqualify at page 8; Defense Brief at pages 4–5.

Attorney Crisp attached as Exhibit A to the Defense Brief a copy of the Criminal Docket

in *Commonwealth of Pennsylvania v. Turiano Roman*, MJ–31105–CR–0000430–2012, assigned to Magisterial District Judge Michael D'Amore in Magisterial District Number 31–1–05, in Allentown, Lehigh County, Pennsylvania. Exhibit A indicates that Turiano Roman was charged with Manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance in violation of 35 Pa.C.S.A. § 780–113(a)(30), and Intention-

On September 14, 2012 defendant Melvin Santiago had a detention hearing before United States Magistrate Judge Hey, at which time defendant Santiago stipulated to probable cause and pretrial detention. Defendant was represented at the detention hearing by Jeffrey Conrad, Esquire.[4]

The government filed an Indictment under seal on October 4, 2012.[5] The Indictment charges defendant Melvin Santiago with the following offenses: (1) Conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B) (Count One); (2) Distribution of cocaine within 1000 feet of a school in violation of 21 U.S.C. §§ 860(a) and 841(a)(1), (b)(1)(C) (Count Nine); (3) Distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count Ten); (4) Distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), and aiding and abetting that offense in violation of 18 U.S.C. § 2 (Count Eleven); (5) Possession with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and aiding and abetting that offense in violation of 18 U.S.C. § 2 (Counts Twelve and Fifteen); (6) Possession with intent to distribute 500 grams or more of cocaine within 1000 feet of a school in violation of 21 U.S.C. §§ 860(a) and 841(a)(1), (b)(1)(B), and aiding and abetting that offense in violation of 18 U.S.C. § 2 (Counts Thirteen and Sixteen); and (7) Possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c) and 21 U.S.C. § 846 (Count Nineteen).

On October 9, 2012 Attorney Crisp submitted this court's standard application for admission to represent Melvin Santiago pro hac vice.[6] On October 10, 2012 Attorney Crisp informed the government that he intended to represent Melvin Santiago.[7] I approved Attorney Crisp's pro hac vice application by Order dated October 17, 2012 and filed October 19, 2012.[8]

An arraignment and attorney status proceeding was scheduled to commence November 5, 2012 before United States

---

al possession of a controlled substance by a person not registered in violation of 35 Pa. C.S.A. § 780–1139(a)(16).

Exhibit A further indicates that Turiano Roman had a preliminary arraignment before Magisterial District Judge Michael J. Faulkner on August 8, 2012. Mr. Roman posted bail with a $25,000 surety bond on August 8, 2012. His preliminary hearing was scheduled for August 15, 2012 but was continued on that date, on October 2, 2012, and again on October 17, 2012. According to Exhibit A, a preliminary hearing in Mr. Roman's case was scheduled for December 18, 2012.

Attorney Crisp is listed as private counsel for Turiano Roman on the "Attorney Information" section of the Criminal Docket, but his "Counsel Status" is designated "Inactive". Francis M. Walsh, Esquire, is also listed as private counsel for Mr. Roman. His Counsel Status is designated "Active".

The docket provided by Attorney Crisp does not indicate, and the government did not provide evidence of, the date, if any, on which Attorney Crisp ended his representation of Turiano Roman. However, Mr. Roman is not charged in the within case; and the government did not seek, in its motion or during the within hearing, to disqualify Attorney Crisp based upon any concurrent representation of Turiano Roman and Melvin Santiago.

**4.** *See* Bail Status and Order of Elizabeth T. Hey dated September 14, 2012 (Document 28).

**5.** The Indictment was unsealed November 28, 2012.

**6.** *See* Application Form for Those Attorneys Seeking to Practice in This Court Pursuant to Local Rule of Civil Procedure 83.5.2(b) (Document 34) at pages 1–4.

**7.** Motion to Disqualify at page 9.

**8.** *See* Order of the undersigned dated October 17, 2012 and filed October 19, 2012 (Document 35).

Magistrate Judge Timothy R. Rice.[9] On November 5, 2012 Attorney Crisp formally entered his appearance for Melvin Santiago,[10] and the arraignment was continued until November 8, 2012.

On November 7, 2012 the government filed and served the within Motion to Disqualify. The following day, November 8, 2012, the court scheduled a hearing for November 26, 2012 on the Motion to Disqualify. On November 25, 2012 Attorney Crisp submitted the Defense Brief in Opposition to Government's Motion to Disqualify Attorney Jonathan Crisp Based Upon an Unwaivable Conflict of Interest, together with Exhibit A to Defense Brief, to the court and served them upon the government.

On November 26, 2012, the hearing concerning the Motion to Disqualify commenced before me. Initially, each party presented oral argument concerning the Motion to Disqualify, with the government, as the moving party, arguing first. The government argued that Attorney Crisp should be disqualified on three independent grounds: (1) "divided loyalty between Attorney Crisp's interests and Defendant Santiago's interests";[11] (2) "Attorney Crisp is a potential Government witness";[12] and (3) even if Attorney Crisp is not called to give testimony at trial, he will act as an "unsworn witness" because of his "personal knowledge of the facts that are part of the Government's conspiracy evidence".[13]

In response, Attorney Crisp argued that he does not, and would not, suffer from any divided loyalty with respect to Melvin Santiago because there was nothing unethical or illegal about his efforts to identify the person or persons who may have served, or may be serving, as an informant against Turiano Roman, and Melvin Santiago.[14] Attorney Crisp argued that it was not, and would not be, unethical or illegal for an attorney to attempt to identify a potential witness against his client in a state prosecution because the identify of the informant was not protected by a court order and the informants identity would ultimately disclosed at, if not before, trial.[15] In addition, Attorney Crisp argued that he could not be called as a witness at trial because his communications with Melvin Santiago are protected by the attorney-client privilege.[16]

Following these arguments and a recess of the proceedings for deliberation, I addressed the parties on the record and further recessed the proceeding until the afternoon of November 28, 2012 to give the parties a full opportunity to introduce evidence in support of, or in opposition to, the Motion to Disqualify.[17]

On November 28, 2012, prior to commencement of the second day of the hearing on the Motion to Disqualify, the government submitted a supplemental letter memorandum in support of its Motion to Disqualify and in response to the court's

---

**9.** *See* Bail Status and Order of United States Magistrate Judge Timothy R. Rice dated November 5, 2012 (Document 42).

**10.** *See* Entry of Appearance dated November 5, 2012 and filed November 6, 2012 (Document 41).

**11.** Transcript of Pretrial Motion Hearing, dated November 26, 2012 ("Day 1 Tr."), at page 20.

**12.** Day 1. Tr. at page 22.

**13.** Day 1 Tr. at pages 26 and 28.

**14.** Day 1 Tr. at pages 29–30.

**15.** *Id.*

**16.** Day 1 Tr. at pages 30–35.

**17.** Day 1 Tr. at pages 37–42.

instructions at the close of the first day of the proceedings. The government provided Attorney Crisp and his client Melvin Santiago with a copy of the supplemental letter memorandum.[18]

During the second day of the hearing, and in response to the court's questions arising from the government's November 28, 2012 supplemental letter memorandum, government counsel clarified and narrowed the government's argument and then moved government exhibits 1, 2, 2a., 3, 4, 5, 6, 7, 8 and 9 into evidence without objection.[19] Defendant did not offer evidence or testimony at the hearing, but Attorney Crisp argued in opposition to the Motion to Disqualify.[20] Government counsel made a brief rebuttal argument.[21]

At the close of the second day of the hearing on the Motion to Disqualify and after the court informed the parties that it would take the Motion to Disqualify under advisement, Attorney Crisp requested, and was granted, leave to submit a written response to the government supplemental letter memorandum. On December 3, 2012, Attorney Crisp submitted his response to the government's supplemental memorandum.[22] Hence this Opinion.

### FACTS

Based upon the facts which were stipulated to by defendant in the Defense Brief and during the hearing on the Motion to Disqualify, and the nine wiretap transcripts which were introduced into evidence, without objection, at the hearing and for purposes of the Motion to Disqualify only, the pertinent facts are as follows.

Law enforcement officials conducted electronic wiretap surveillance on a cellular telephone used by Melvin Santiago from July 13, 2012 through August 10, 2012.[23] Melvin Santiago, Ramon Reyes (also known as "Bash"), and Turiano Roman (also known as "Papo") were allegedly members of a drug trafficking organiza-

---

**18.** *See* Letter memorandum from government counsel to the court "Re. Motion to Disqualify Attorney Jonathan Crisp" dated November 27, 2012 and submitted November 28, 2012 ("Government Supplemental Memorandum"), together with nine unclassified transcripts of wiretap recordings which were subsequently admitted without objection as government exhibits one through nine during the second day of the hearing on the Motion to Disqualify.

**19.** Defendant Melvin Santiago stipulated to the admissibility of government exhibits 1 through 9 at the hearing for purposes of the Motion to Disqualify only. Transcript of Hearing Pretrial Motion Hearing, dated November 28, 2012 ("Day 2 Tr.") at page 44.

**20.** Day 2 Tr. at pages 30–45.

**21.** Day 2 Tr. at page 45–52.

**22.** *See* Letter memorandum from defendant to the court "Re. Response to Government's Motion to Disqualify" dated November 29, 2012 and submitted December 3, 2012 ("Defendant's Supplemental Memorandum").

Attorney Crisp submitted his supplemental response memorandum to the court on December 3, 2012 by facsimile. Neither the facsimile cover sheet indicated that a copy was sent to the government. My chambers informed defense counsel's office that the court had not instructed, or intended, Attorney Crisp to submit his supplemental response memorandum ex parte. On December 4, 2012, Attorney Crisp's office confirmed that his supplemental response memorandum was provided to the government.

On December 5, 2012, Attorney Crisp filed the Defense Motion to Accept Late Filing (Document 73), which requests that the court accept the late submission of the supplemental response memorandum opposing the Motion to Disqualify. By Order accompanying this Opinion, I granted the Defense Motion to Accept Late filing, and I have considered defendant's supplemental response memorandum.

**23.** Defense Brief at page 2.

tion.[24] Defendant Santiago was the purported leader of the organization.[25]

In early August 2012, while defendant Santiago was in Puerto Rico, he arranged to have a quantity of cocaine transported from Puerto Rico to Allentown, Pennsylvania.[26]

When the shipment of cocaine arrived in Allentown, Melvin Santiago instructed others who worked for him to "cut" the cocaine with non-controlled substances in order to increase its total volume and then to provide that cocaine to Ramon Reyes for further distribution to others, including Turiano Roman.[27]

On August 8, 2012, Ramon Reyes accepted delivery of the cocaine which Melvin Santiago had arranged to be transported from Puerto Rico and, that same day, delivered approximately 200 grams of that cocaine to Turiano Roman.[28] Shortly after accepting the cocaine from co-defendant Ramon Reyes, Mr. Roman was arrested at a Redner's supermarket on Airport Road in Allentown, Pennsylvania at approximately 3:07 p.m. on August 8, 2012.[29]

At 3:32 p.m., less than 30 minutes after Mr. Roman was arrested, Melvin Santiago—who was in Puerto Rico at the time—had a telephone conversation with an unknown male who told him that "Papo" (Turiano Roman) had just been arrested. Melvin Santiago told the unknown male to give him "Papo's" full name so that he could call Attorney Crisp and give him Turiano Roman's information.[30]

At 3:35 p.m., three minutes after he spoke with the unknown male and learned of Turiano Roman's arrest, Melvin Santiago had a telephone conversation with "Harry". Harry asked defendant Santiago whether he had already called, and spoken with, Attorney Crisp.[31] Melvin Santiago told Harry that he was trying to reach Attorney Crisp on another line but that Attorney Crisp was not picking up the phone.[32] Harry then told Melvin Santiago that he had "a feeling who did it" and that Melvin Santiago should call Attorney Crisp and "have him call right away to get information."[33] Defendant Santiago responded that he would.[34]

At 3:43 p.m., approximately eight minutes after Melvin Santiago spoke with "Harry" and indicated to Harry that he would call Attorney Crisp, Harris "Harry" Roman called Melvin Santiago to find out if he had called and reached Attorney Crisp concerning Harry's brother, Turiano Roman.[35] Melvin Santiago told Harry Roman that Attorney Crisp was in a meeting but that Attorney Crisp would call Melvin Santiago as soon as the meeting concluded.[36]

Harry Roman told defendant Santiago that Turiano Roman's arrest at Redner's market took place quickly and that he did not know why Turiano Roman was at Red-

24. *Id.*

25. *Id.*

26. *Id.*

27. Defense Brief at page 2.

28. *Id.*

29. *Id.*

30. *See* Government Exhibit 2 at page 1.

31. Government Exhibit 3 at page 1.

32. *Id.*

33. *Id.*

34. *Id.*

35. Government Exhibit 2a. at page 1.

36. *Id.*

ner's or who he was meeting there.[37] Harry Roman reiterated his belief that he knew—"almost certain ... 99.9" percent certain—who informed law enforcement about Turiano Roman. Harris Roman said to Melvin Santiago, "I've suspected him for a while[,] that fucking bastard. He was so quiet. I know I ... [it] was that fucking bastard, man. But I can do nothing. I want Jon[anthan Crisp] to find out over there."[38] Melvin Santiago responds, "Yes, Jon[athan Crisp] takes—all that comes out in there. My God, I get the [c]reeps."[39]

At 3:48 p.m., sixteen minutes after Melvin Santiago first learned of Turiano Roman's arrest, defendant Santiago spoke with Attorney Crisp by telephone. He told Attorney Crisp that he needed him because Harry Roman's brother, Turiano Roman, was arrested by vice officers in Allentown, Pennsylvania.[40] Melvin Santiago gave Harry Roman's name to Attorney Crisp, who located a phone number for Harry Roman in his phone.[41] Attorney Crisp told Melvin Santiago to let Attorney Crisp call Harry Roman "real quick" and then Attorney Crisp would call defendant Santiago back.[42]

Also at 3:48, Melvin Santiago spoke with a male named "Joel", whose last name is unknown.[43] Initially, defendant Santiago and Joel were the only parties on the line.

However, during their conversation, Attorney Crisp called Melvin Santiago who then brought Attorney Crisp into a three-way call between Melvin Santiago, Attorney Crisp, and Joel.[44]

Prior to bringing Attorney Crisp into the three-way call, Melvin Santiago told Joel that Attorney Crisp had previously told Melvin Santiago, "Don't worry, the—the name can be found."[45]

After Melvin Santiago initiated the three-way call by bringing Attorney Crisp's call in, Attorney Crisp told Melvin Santiago and Joel that the phone number Attorney Crisp had for Harry Roman was not correct. Melvin Santiago told Joel to give Harry Roman's phone number to Attorney Crisp so that Attorney Crisp could call Harry Roman concerning Turiano Roman. Attorney Crisp took Harry Roman's phone number from Joel and said that he would call back.[46] Attorney Crisp then disconnected from the call.[47] After Attorney Crisp disconnected from the three-way call, Joel said that there was a police officer in front of him and that he would call back.[48]

At 4:10 p.m., Melvin Santiago spoke again with Joel.[49] Melvin Santiago said to Joel, "Tell me ... Tell me."[50] Joel responded to Melvin Santiago, "Fucker, call the lawyer regardless.... Call the lawyer and tell him to find out ... Tell him to find

**37.** Government Exhibit 2a. at page 1.

**38.** *Id.*

**39.** *Id.*

**40.** Government Exhibit 4 at page 1.

**41.** Government Exhibit 4 at page 2.

**42.** *Id.*

**43.** *See* Government Exhibit 5 at page 1.

**44.** Government Exhibit 5 at pages 1–4.

**45.** Government Exhibit 5 at page 1.

**46.** Government Exhibit 5 at page 3.

**47.** *Id.*

**48.** Government Exhibit 4 at page 4.

**49.** The wiretap transcripts indicate that an unknown female could be overheard in the background. Government Exhibit 8 at pages 1–2.

**50.** Government Exhibit 8 at page 1.

out because those [c* * *] suckers are talking kind of weird. That what happened was … that an incident happened on Gordon and—and—and Front [Streets] … That a gun was pulled out and everything and they gave a description. But if she was coming out from the house, how did they give a description … if she was leaving the house?"[51]

At 4:47 p.m., approximately one hour and a quarter after Melvin Santiago learned of Turiano Roman's arrest, defendant Santiago was speaking on the telephone with Marisol Morales when he received an incoming call from Attorney Crisp.[52] Melvin Santiago picked up the incoming call from Attorney Crisp. Attorney Crisp told Melvin Santiago that he was not able to locate any information on Turiano Roman's status and that Lehigh County Prison in Allentown did not have any record of him."[53]

At 5:07 p.m. that day, Melvin Santiago again spoke with Harry Roman. Melvin Santiago told Harry Roman that "the attorney", Attorney Crisp, was checking into Turiano Roman's location and the charges on which he was arrested. Defendant Santiago also told Harry Roman that Turiano Roman is "a little trooper" who "can handle it fine, like it's nothing."[54]

The following morning, on August 9, 2012 at 9:10 a.m., Melvin Santiago again spoke with Joel. The two discussed, among other things, Turiano Roman's arrest the previous day and their suspicions about who might be informing law enforcement officials about the organization's trafficking activities.[55] During the conversation, Joel told Melvin Santiago, "change that number and don't call absolutely anyone you know", and later in the conversation said, "the only thing I'm telling you is to fucking change your number and—and to t—tell everyone that you're not doing anything, fucker."[56] Melvin Santiago said to Joel, "If someone snitched, someone set [Turiano Roman] up; my lawyer is going to find out about that. That the way it is. You understand?"[57] Joel said to Melvin Santiago, "Whoever it is, is very close."[58]

## CONTENTIONS OF THE PARTIES

### Government's Contentions

In its Motion to Disqualify, the government contends that Attorney Crisp should be disqualified from representing defendant Melvin Santiago in this matter for several reasons.

### Witness and/or Unsworn Witness

The government's Motion to Disqualify asserts that Attorney Crisp has an "actual conflict of interest in his representation of defendant, Melvin Santiago", because "at a minimum, [Attorney] Crisp is a potential government witness in the case against [Mr.] Santiago" and "[t]his circumstance provides a clear basis for the required disqualification of [Attorney] Crisp."[59]

---

51. *Id.*

52. Government Exhibit 6 at pages 1–2.

53. Government Exhibit 6 at page 2.

54. Government Exhibit 7 at page 2.

55. Government Exhibit 9 at pages 1–18.

56. Government Exhibit 9 at pages 2 and 5.

57. Government Exhibit 9 at page 5.

58. *Id.*

59. Motion to Disqualify at page 1.

In an e-mail sent in the evening of September 13, 2012 from AUSA Stephan to Attorney Crisp, AUSA Stephan states the following:

it is clear that you *would be a potential (and probable) government witness* and your name would be mentioned in discussing numerous other intercepted communications. This presents an unwaivable conflict of interest as you cannot be an advocate

*Potential Liability*

In its Motion to Disqualify, the government states that, "at a minimum", Attorney Crisp is a potential government witness in this case.[60] However, the government goes on to state that it will produce evidence at trial that Melvin Santiago was attempting, through Attorney Crisp, to determine who "snitched" on Turiano Romano, leading to Mr. Romano's arrest on August 8, 2012.[61]

Moreover, several of the cases cited and relied upon by the Government in its Motion to Disqualify deal with attorney disqualification in criminal cases where the attorney's alleged conduct would subject the attorney to potential professional or criminal liability and thereby create a conflict between the attorney's interests of the client.[62]

Accordingly, the government's Motion to Disqualify may reasonably be read to contend (implicitly at least) that Attorney Crisp might be subject to professional or criminal sanction arising from his alleged efforts to obtain the identity of the person or persons who "snitched" on Turiano Roman and his alleged willingness to communicate the identity or identities to Melvin Santiago for use in some untoward purpose, thus creating an actual conflict of interest between Attorney Crisp and Melvin Santiago.[63]

The government's implicit contention arose on the first day of hearing on the Motion to Disqualify,[64] and the court addressed the issued directly during the second day of the hearing.[65]

At that time, the government made it clear that it did not possess any evidence or other information which would subject Attorney Crisp to potential professional sanction or criminal liability.[66] The government clarified its position and explained

---

and a witness. This is true under both 3rd Circuit case law as well as the Pennsylvania Rules of Professional Conduct.
Motion to Disqualify at page 8 (emphasis added); *see also* Defense Brief at page 4.
The concluding paragraph of the government motion states:
*Crisp is clearly a potential government witness.* Crisp has actual information about the conspiracy between Santiago and his associates. Crisp's name will come up many times during trial through evidence that supports a drug conspiracy. Evidence that Santiago was attempting to find out the name of any possible "snitches" and his interest (an expressed understanding) that Crisp will aid him in that endeavor will come to a jury's attention. Clearly Crisp's interests will not be appropriately aligned with Santiago's best interest.
Motion to Disqualify at page 13 (emphasis added).

**60.** Motion to Disqualify at page 1.

**61.** Motion to Disqualify at page 13.

**62.** *See* Motion to Disqualify at pages 9–12 (citing, among others, *United States v. Merlino*, 349 F.3d 144 (3d Cir.2003), cert. denied

sub nom. *Ciancaglini v. United States*, 541 U.S. 965, 124 S.Ct. 1726, 158 L.Ed.2d 409 (2004); *United States v. Locascio*, 6 F.3d 924 (2d Cir.1993), cert. denied *Gotti v. United States*, 511 U.S. 1070, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); and *Government of the Virgin Islands v. Zepp*, 748 F.2d 125 (3d Cir. 1984)).

**63.** Attorney Crisp read that implicit contention in the Motion to Disqualify. In the Defense Brief, Attorney Crisp responds in opposition that although "evidence that Santiago may or may not have attempted to ascertain the identity of a confidential informant is potentially relevant to the Government's case, the fact Santiago asked Crisp to ascertain such information [—the identity of the confidential informant—]is not criminal in nature." Defense Brief at page 6.

**64.** Day 1 Tr. at pages 18–21.

**65.** Day 2 Tr. at pages 10–11.

**66.** Day 2 Tr. at pages 10–11.

that it was seeking to disqualify Attorney Crisp because the government intends to call him as a witness at trial and, more importantly (according to the government), Attorney Crisp would become an unsworn witness even if he were not called to testify under oath at trial because Attorney Crisp would very likely make argument to the jury concerning recorded conversations in which he was a participant and about which he has personal knowledge.[67]

Because the government does not contend,[68] and did not adduce evidence that, Attorney Crisp may be subject to potential professional or criminal punishment for any of his actions, my consideration of the Motion to Disqualify will be limited to the grounds advanced by the government at the motion hearing.

### Defendant's Contentions

In the Defense Brief, Attorney Crisp contends that the government's Motion to Disqualify should be denied because he is not a potential witness at trial. Attorney Crisp contends that the government intends to call him as a witness to testify concerning conversations between himself and Melvin Santiago which are, according to Attorney Crisp, protected by the attorney client privilege.[69]

Attorney Crisp acknowledges that his name "may come up" during the course of defendant's trial, but contends that "the mention of a defense attorney does not rise to the level of a conflict of interest."[70]

### DISCUSSION

■ In ruling on motions which seek to disqualify a party's counsel of choice, the district courts are required to develop a sufficient record to permit a reasoned decision in which the court balances "proper considerations of judicial administration against the right to counsel", and then to conduct such a balancing. *United States v. Stewart*, 185 F.3d 112, 120 (3d Cir.1999), cited with approval in *United States v. Tinsley*, 172 Fed.Appx. 431, 434 (3d Cir. 2006).

The Opinion of the United States Court of Appeals for the Third Circuit in *United States v. Merlino*, 349 F.3d 144 (3d Cir. 2003) is the Circuit's "leading case on the disqualification of counsel of choice and in general". *Tinsley*, 172 Fed.Appx. at 435.

In *Merlino*, the Third Circuit Court of Appeals stated that "[a] criminal defendant's Sixth Amendment right to counsel of one's choice is not absolute; where considerations of judicial administration su-

---

**67.** Day 2 Tr. at pages 11–12. Government counsel suggested one "additional ground", which relates to the issue of judicial administration. Specifically, government counsel expressed concern that jurors might—even if Attorney Crisp's actions were not criminal or professionally unethical—infer, after hearing the wiretap recordings and seeing the transcripts of those recordings, that Melvin Santiago was attempting to identify the person who cooperated with the government and informed against Turiano Roman in an effort to convince that individual not to cooperate with the government or, possibly, to retaliate against that individual for having cooperated. Government counsel suggests that Melvin Santiago may be prejudiced because the jurors might presume that Attorney Crisp knew Melvin Santiago wanted the informant's iden-

tify in order to do ill toward the informer and was willing to attempt to identify the informant nonetheless.

**68.** *See* Government's Supplemental Memorandum at page 2.

**69.** Defense Brief at pages 5–8. The Defense Brief makes clear that Attorney Crisp does not contend that any discussions between he and Melvin Santiago, which Mr. Santiago subsequently disclosed to third parties, are protected by the attorney client privilege, but would simply be subject to the Federal Rules of Evidence. Defense Brief at page 7.

**70.** Defense Brief at page 6.

pervene, the presumption in favor of counsel of one's choice is rebutted and the right must give way." *Merlino,* 349 F.3d at 150 (quoting *United States v. Voigt,* 89 F.3d 1050, 1074 (3d Cir.1996)) (internal quotations omitted).

In the *Merlino* case, the Third Circuit concluded that there were multiple sources of conflict, each of which were grounds for disqualification of Morris W. Pinsky, Esquire, from representing defendant George Borgesi in a federal prosecution of La Cosa Nostra in Philadelphia. *See Merlino,* 349 F.3d at 146, 149–152.

First, the Third Circuit found that Attorney Pinsky's disqualification was appropriate based upon his potential criminal and/or professional liability arising from a prison meeting that Attorney Pinsky had with Gaetano Scafidi, who was cooperating with the government, during which Attorney Pinsky appeared to have "tried to influence either Scafidi's testimony before the grand jury or Scafidi's decision to cooperate with the federal authorities." *Merlino,* 349 F.3d at 151.[71]

Second, the Third Circuit found that Attorney Pinsky's jailhouse meeting with Gaetano Scafidi could have led to Attorney Pinsky being called as a witness at trial. *Merlino,* 349 F.3d at 152.

At the *Merlino* trial, the government adduced evidence of the jailhouse meeting to demonstrate Mr. Borgesi's (Attorney Pinsky's client's) consciousness of guilt. *Id.* The Third Circuit noted that if Mr. Borgesi had wished to challenge that evidence, or the government's interpretation of that evidence, he could have done so by calling Attorney Pinsky as a witness—to testify about what happened at the meeting and the purpose of the meeting. *See id.* The Third Circuit found that this was "a second source of potential conflict, as it is often impermissible for an attorney to be both an advocate and a witness." *Id.* (citing Rule 3.7(a) of the Pennsylvania Rules of Professional Conduct).[72]

Finally, the Third Circuit noted that an attorney may be disqualified "based solely on a lawyer's personal knowledge of events likely to be presented at trial, even if the lawyer is unlikely to be called as a witness." *Merlino,* 349 F.3d at 152 (citing

---

**71.** The government did not produce any evidence of conduct by Attorney Crisp which was of a nature similar to the jailhouse meeting between Attorney Pinsky and Geatano Scafidi. The wiretap transcripts introduced during the hearing suggest that Attorney Crisp attempted to gather information concerning Turiano Roman for the purpose of communicating that information to Melvin Santiago and/or Harry Roman. Attorney Crisp contends, and the government does not dispute, that he did not do anything illegal or professionally unethical. Nonetheless, as the government put it during the hearing, Melvin Santiago was not trying to find out the identity of the person who alerted law enforcement officials about Turiano Roman in order to say "Thank you". (Day 1 Tr. at page 19.)

**72.** Rule 3.7 of the Pennsylvania Rules of Professional Conduct provides, in pertinent part, that

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
(1) the testimony relates to an uncontested issue;
(2) the testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.

Pa.R.P.C. 3.7(a).

The Explanatory Comment to Rule 3.7 provide, in pertinent part, that "Combining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." *Id.,* Explanatory Comment.

*United States v. Locascio,* 6 F.3d 924, 933 (2d Cir.1993)); *see also Tinsley,* 172 Fed. Appx. at 435 (quoting *Merlino,* 349 F.3d at 152). This is the so-called "unsworn witness" problem, which I address in greater detail below.

### Unsworn Witness

■ Defense counsel may be disqualified for reasons other than the existence of a conflict of interest between that attorney and his client. *United States v. Evanson,* 584 F.3d 904, 909 (10th Cir.2009). The existence of the so-called "unsworn witness problem" may warrant disqualification of an attorney. *Id.* (citing *Locascio,* 6 F.3d at 933–934).

Relying on the Second Circuit's Opinion in *Locascio,* cited favorably by the Third Circuit in *Merlino,* the United States Court of Appeals for the Tenth Circuit explained that

[t]he [unsworn witness] problem arises when an attorney was a participant in events to be explored at trial. In that circumstance the attorney might convey "first-hand knowledge of the events without having to swear an oath or be subject to cross examination." An attorney providing "unsworn testimony" is not at odds with his client—there is no conflict of interest. Rather, "the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired."

*Evanson,* 584 F.3d at 909 (quoting *Locascio,* 6 F.3d at 933–934) (internal citations omitted).

The Pennsylvania Rules of Professional Conduct recognized that the primary potential harm caused when an attorney serves as an unsworn witness is harm to the factfinding process, to the administration of justice, and not necessarily to the defendant. *See* Pa.R.P.C. 3.7, Explanatory Comment.[73]

■ Because the unsworn witness problem operates to the detriment to the factfinding process and to the government as the opposing party, a waiver by the defendant does not cure the problem. *Locascio,* 6 F.3d at 934.

■ As government counsel stated during her rebuttal argument on the second day of the hearing on the Motion to Disqualify, the essence of the government's argument is that the unsworn witness problem created by Attorney Crisp's continued representation of Melvin Santiago warrants the disqualification of Attorney Crisp from such representation.[74] For the following reasons, I agree.

Melvin Santiago and eight co-defendants are charged with, among other things, conspiracy to distribute 500 grams or more of cocaine. Melvin Santiago, Ramon Reyes and Turiano Roman are allegedly members of the same drug trafficking organiza-

**73.** The Explanatory Comment states, in pertinent part, that "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client." Pa.R.P.C. 3.7, Explanatory Comment. The tribunal and the opposing party are prejudiced even if the attorney gives testimony consistent with, or favorable to, his client. A conflict of interest arises when an attorney gives testimony that is adverse to his client's interest. *See id.*

**74.** *See* Day 2 Tr. at pages 46–47 and 51. Specifically, government counsel argued that "when this all boils down ... at the end of the day, ... [Attorney Crisp] is, an unsworn witness, whether we called him or didnt call him, whether or not he's claiming there's some kind of privilege or not claiming [privilege], he can't get around the fact that he's an unsworn witness in this case ... [a]nd I think it all boils down to, on that alone, he must be disqualified." Day 2 Tr. at pages 51–52.

tion.[75] Ramon Reyes is named in the Indictment as a co-defendant in this case, while Turiano Roman is an unindicted (in this matter, at least) coconspirator.

The government intends to introduce at trial the wiretap transcripts admitted as government exhibits 1–9 on day one of the hearing, as well as the underlying recordings.[76]

As described above,[77] these wiretap transcripts contain, among other things, statements by Melvin Santiago concerning (1) the need to identify the person or persons who "snitched" on Turiano Roman; (2) his belief that Attorney Crisp was willing and able to identify the "snitch"; and (3) his worries about the arrest of Turiano Roman and the fact that someone's cooperation with the government might have led to Turiano Roman's arrest.

The government contends that the timing, number, and content of the calls intercepted in the hours following Turiano Roman's arrest all amount to evidence in support of its conspiracy charge against Melvin Santiago. In other words, the government intends to produce evidence at trial that Melvin Santiago (1) was informed of Turiano Roman's arrest within a half an hour of that arrest despite the fact that Melvin Santiago was in Puerto Rico at the time; (2) attempted to locate Turiano Roman through a flurry of telephone calls with various individuals immediately upon learning of Turiano Roman's arrest; and (3) was attempting to use Attorney Crisp to both locate Turiano Roman and identify the person who "snitched" and thereby caused Turiano Roman's arrest.

From this evidence, it appears that the government will argue that a close relationship exists between the interests and activities or Turiano Roman and those of Melvin Santiago, and that Melvin Santiago was adamant about identifying the individual cooperating against Turiano Roman because that person would also have incriminating information about Melvin Santiago which he or she may also have shared with the government.

Even if Melvin Santiago does not offer any evidence or testimony to rebut these positions asserted by the government, he, through his counsel, will very likely need to address the government's contemplated interpretation of the wiretap recordings and argue that they do not demonstrate any agreement or close relationship between Melvin Santiago and Turiano Roman or any other person.[78]

---

75. Defense Brief at page 2.

76. Day 1 Tr. at page 19.

77. *See* Facts, *supra.*

78. When asked during day two of the hearing on the Motion to Disqualify, Attorney Crisp essentially acknowledged that he would make such arguments at trial. Specifically, the court and Attorney Crisp engaged in the following exchange:

THE COURT: ... Are you saying that you would not seek to argue to the jury that these calls were not for any improper purpose—or that you would not argue to the jury that the calls don't show any connection between defendant [Melvin Santiago] and Turiano Roman?

MR. CRISP: I don't see—how I would do that would be through typical witness evidence, not through myself. So, obviously, my client could testify to certain matters. I'm sure that the government is going to bring in witnesses who would be able to address those things. How is that any different?

And me presenting argument in closing as to what's the relevance of [Melvin Santiago] calling an attorney to ask certain questions is no different that arguing, what's the relevance of him calling another individual to ask certain questions?

THE COURT: Well, if I understand your answer correctly, you're saying, well, you wouldn't be testifying.

MR. CRISP: Correct.

If Attorney Crisp were to remain as Melvin Santiago's counsel in this case, Attorney Crisp would be placed in the position of having to argue for a particular interpretation of telephone calls in which he either participated or is mentioned. In other words, Attorney Crisp would be in the position of arguing that Melvin Santiago's requests and efforts to have Attorney Crisp locate and represent Turiano Roman do not demonstrate a close relationship between Melvin Santiago and Turiano Roman, and that Attorney Crisp's own efforts to discover the identity of a confidential informant at Melvin Santiago's behest do not demonstrate a relationship between defendant Santiago and Turiano Roman, and were not part of any attempt by Melvin Santiago to retaliate against the informant or convince the informant not to cooperate with the government.

Because Attorney Crisp has firsthand knowledge of some of the telephone calls made following Turiano Roman's arrest on August 8, 2012 and of his own efforts to locate Turiano Roman and to identify the confidential informant, Attorney Crisp would act as an unsworn witness were he to make argument for a particular interpretation of these events. *See Evanson,* 584 F.3d at 909 (quoting *Locascio,* 6 F.3d at 933–934).

THE COURT: You would only be making arguments based on the testimony that you had already presented . . . on behalf of your client either through his testimony and/or the testimony of others . . . who you would also call[?]

MR. CRISP: Correct.

THE COURT: And that's what attorney's do.

MR. CRISP: Correct . . . I see no difference there. There's—I don't see anything necessarily improper in—in doing it that—in that fashion. But yes, . . . you summarize my position correctly, sir.

(Day 2 Tr. at pages 43–44.)

Here, Attorney Crisp asserted that he would not testify at trial, but would make argument

Because the integrity of the factfinding process would be compromised if Attorney Crisp were permitted to act as an unsworn witness in this case, I conclude that considerations of judicial administration here are sufficient to overcome the presumption in favor of the retained counsel of defendant Santiago's choice. Accordingly, on that basis, I grant the Motion to Disqualify and order withdrawn Attorney Crisp's appearance on behalf of Melvin Santiago in this case.

### Sworn Witness

■ The government further contends that Attorney Crisp should also be disqualified because the government will likely call him as a witness in its case against Melvin Santiago and his co-defendants to testify about information and events which are not protected by the attorney-client privilege.

Specifically, government counsel stated that Attorney Crisp may be called as a witness and asked whether, and when, he spoke to Harry Roman about representing Turiano Roman?[79] Government counsel further indicated that Attorney Crisp might be asked about whether, and when, he placed telephone calls to the Allentown Police Department, Lehigh County Prison, and the booking office for Lehigh County in an effort to locate Turiano Roman on

in closing concerning the relevance, or lack thereof, of particular evidence presented and admitted at trial. (*See id.*) However, what Attorney Crisp did not address at the hearing, or in his supplemental letter response in opposition submitted on December 3, 2012 after the hearing, is that, even without testifying, he would become an unsworn witness by making argument concerning information and events about which he has firsthand, personal knowledge or in which he was himself involved.

79. Day 1 Tr. at page 24.

August 8, 2012.[80] Finally, government counsel also stated that Attorney Crisp may be called as a witness to authenticate or identify the voices on wiretap recordings.[81]

At this relatively early stage of the proceedings, it appears that the government intends to call, or is seriously considering the possibility of calling, Attorney Crisp as a witness at trial. Moreover, it is certainly conceivable that Attorney Crisp might be asked to testify to matters either not protected by attorney-client privilege, or as to which the attorney-client privilege has been waived.

█ In order for the attorney-client privilege to attach at a particular communication, that communication "must be (1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Chevron Corporation*, 650 F.3d 276, 289 (3d Cir. 2011) (*"Chevron II"*) (internal quotations omitted).

█ "If persons other than the client, [his] attorney, or their agents are present, the communication is not made in confidence" and, accordingly, the privilege does not attach in the first place. *Chevron II*, 650 F.3d at 289 (quoting *In re Teleglobe Communications Corp.*, 493 F.3d 345, 361 (3d Cir.2007)).

█ Here, one of the wiretap transcripts was produced from the recording of a call initially between Melvin Santiago and a male named Joel which was subsequently converted into a three-way telephone call between Melvin Santiago, Joel, and Attorney Crisp during which Melvin Santiago directed Joel to give Harry Roman's phone number to Attorney Crisp so

that Attorney Crisp could contact Harry Roman to obtain information that would allow Attorney Crisp to locate Turiano Roman.[82] Because Joel was present on the call, no privilege attaches to that particular communication. *In re Teleglobe*, 493 F.3d at 359.

Moreover, the Third Circuit has stated that, "because the attorney-client privilege serves to protect the confidentiality of communications between clients and their attorneys, 'disclosure to a third party waives the attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance.' " *In re Chevron Corporation*, 633 F.3d 153, 165 (3d Cir.2011) (*"Chevron I"*) (quoting *Westinghouse Electric Corporation v. The Republic of the Philippines*, 951 F.2d 1414, 1428 (3d Cir.1991)).

█ If a client "discloses a portion of otherwise privileged [communications] while withholding the rest, the privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary." *Westinghouse Electric*, 951 F.2d at 1426 n. 12.

Here, after Turiano Roman was arrested on August 8, 2012, Melvin Santiago told Joel that he had spoken with Attorney Crisp and that Attorney Crisp was going to get the name of the person who had cooperated with law enforcement in the arrest of Turiano Roman. Specifically, Melvin Santiago and Joel had the following conversation:

> [Joel] Look, don't tell anybody at all that I'm investigating Minnie [spelled phonetically]. You know?

---

80. Day 1 Tr. at page 25.

81. Day 1 Tr. at pages 25–26.

82. *See* Government Exhibit 5 at pages 2–4.

[Melvin] Don't worry. Uh, I only spoke with my lawyer. The lawyer is already—the lawyer is going to call Harry [Roman] now. . . .

[Joel] Well, because, Minnie . . . is sort of weird.

[Melvin] Well, he has to be taken—[overlapping voices] it has to—don't tell anyone but its just that the lawyer is going to get the name for you. I told him—

[Joel] Uh-u.

[Melvin]—that it was snitched. He told me, "Don't worry, the—the name can be found." [83]

In the above conversation, Melvin Santiago has not disclosed the substance of his communications with Attorney Crisp to such a degree that a complete waiver of the privilege has occurred. However, Melvin Santiago voluntarily disclosed to Joel the substance of Melvin Santiago's communications with Attorney Crisp concerning Melvin Santiago's desire for Attorney Crisp to obtain the identity of the confidential informant cooperating with the government against Turiano Roman and, potentially, against Melvin Santiago.

Accordingly, even if Melvin Santiago's communications with Attorney Crisp concerning a potential confidential informant and Attorney Crisp's ability, and willingness, to identify such an informant for Melvin Santiago were initially privileged, defendant Santiago waived the privilege as to those communications by voluntarily disclosing their substance to Joel, a third party, on August 8, 2012.[84] *See Chevron I*, 633 F.3d at 165; *Westinghouse Electric*, 951 F.2d at 1426 n. 12.

Because Melvin Santiago's voluntary disclosure to Joel waived the attorney-client privilege as to Melvin Santiago's communications with Attorney Crisp concerning the possibility of

Attorney Crisp obtaining the identity of the confidential informant, Attorney Crisp is a potential witness as to those communications. Attorney Crisp's status as a potential government witness at the trial of Melvin Santiago creates a serious potential conflict of interest which supports disqualification of Attorney Crisp. As the Third Circuit stated in *Merlino*, "it is often impermissible for an attorney to be both an advocate and a witness". *Merlino*, 349 F.3d at 152 (citing Pa.R.P.C. 3.7(a)).

Rule 3.7(a) of the Pennsylvania Rules of Professional Conduct forbids an attorney from representing a client in a case where the lawyer is "likely to be necessary witness", except in certain specified circumstances. Those circumstances are not present here because, if called, Attorney Crisp would not likely be testifying to an uncontested issue (Melvin Santiago's reasons for seeking the identity of the confidential informant, and Melvin Santiago's relationship with Turiano Roman are likely to be contested issues), Pa.R.P.C. 3.7(a)(1); Attorney Crisp would not be testifying about the nature or value of legal services he provided to Melvin Santiago, Pa.R.P.C. 3.7(a)(2); and, because these proceedings are at a relatively early state, Attorney Crisp's disqualification would not "work substantial hardship on" Melvin Santiago. Pa.R.P.C. 3.7(c).

As explained above, Attorney Crisp is a potential government witness at trial and his status as such creates a potential conflict of interest for his client, defendant Melvin Santiago.

Although a criminal defendant can waive his Sixth Amendment rights in some

---

83. Government Exhibit 5 at page 1.

84. *Id.*

circumstances, the right to waiver is not absolute, because "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

Even if defendant Santiago were willing to waive this potential conflict of interest, the court would not be required to accept that waiver. *See id.* Because "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party and can also involve a conflict of interest between the lawyer and client" and because, as explained previously in this opinion, Attorney Crisp would be an unsworn witness even if he were not ultimately called by the government to testify at trial, I would not accept Melvin Santiago's waiver of the potential conflict of interest in this matter.

Accordingly, because Attorney Crisp is a potential witness in this case, I grant the Motion to Disqualify and withdraw Attorney Crisp's appearance on behalf of Melvin Santiago in this matter.

## CONCLUSION

For the reasons expressed in this Opinion, I grant the government's Motion to Disqualify and withdraw the appearance of Jonathan W. Crisp, Esquire, on behalf of defendant Melvin Santiago in this matter. Specifically, I grant the government's motion and withdraw Attorney Crisp's appearance because Attorney Crisp's representation of defendant Santiago at trial would create an "unsworn witness" problem, and because Attorney Crisp may be called by the government as a witness at trial.

## ORDER

NOW, this 3rd day of January, 2013, upon consideration of the following documents:

(1) Government's Motion to Disqualify Attorney Jonathan Crisp Based Upon an Unwaivable Conflict of Interest, which motion was filed under seal and served upon defendant on November 7, 2012 ("Motion to Disqualify");

(2) Defense Brief in Opposition to Government's Motion to Disqualify Attorney Jonathan Crisp Based Upon an Unwaivable Conflict of Interest, which brief was submitted to the court and served upon the government on November 25, 2012, together with

(A) Exhibit A to Defense Brief;

(3) Letter memorandum from the government to the court "Re. Motion to Disqualify Attorney Jonathan Crisp" dated November 27, 2012 and submitted on November 28, 2012, together with

(A) Ten unclassified transcripts of wiretap recordings which were subsequently admitted, as Government Exhibits 1, 2, 2a., 3, 4, 5, 6, 7, 8 and 9 without objection during the hearing on the Motion to Disqualify;

(4) Letter memorandum from defendant to the court "Re. Response to Government's Motion to Disqualify" dated November 29, 2012 and submitted on December 3, 2012; and

(5) Defense Motion to Accept Late Filing, which motion was filed on December 5, 2012 (Document 73);

after hearing held before the undersigned on November 26, 2012 and November 28, 2012; and for the reasons expressed in the accompanying Opinion,

*IT IS ORDERED* that the Motion to Disqualify is granted.

*IT IS FURTHER* ORDERED that the appearance of Jonathan W. Crisp, Esquire, on behalf of defendant Melvin Santiago, is withdrawn.

*IT IS FURTHER ORDERED* that the Defense Motion to Accept Late Filing is granted.